80 N.J. Super. 411 (1963)
194 A.2d 3
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WARREN E. DENNIS, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1963.
Decided September 30, 1963.
*412 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. William T. Sutphin (assigned counsel) argued the cause for appellant.
Mr. Peter Murray, Essex County Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is an appeal from the denial of a motion for judgment of acquittal and from a judgment of conviction on a charge of violation of N.J.S. 2A:170-8 entered in the Essex County Court by Judge Conklin, sitting without a jury. That judgment was rendered on an appeal to the County Court from a similar conviction by the Newark Municipal Court. Defendant was here charged with and convicted of being "under the influence of" a narcotic drug.
N.J.S. 2A:170-8 provides:
"Any person who uses or who is under the influence of any narcotic drug, as defined in article 1 of chapter 18 of Title 24 of the Revised Statutes (Food and Drugs), the uniform narcotic drug law, for a purpose other than the treatment of sickness or injury as prescribed or administered by a person duly authorized by law to treat sick and injured human beings, is a disorderly person.
In a prosecution under this chapter, it shall not be necessary for the State to prove that the accused did use or was under the influence of any specific narcotic drug or drugs, but it shall be sufficient for a conviction *413 under this chapter for the State to prove that the accused did use or was under the influence of some narcotic drug or drugs as defined in article 1 of chapter 18 of Title 24 of the Revised Statutes (Food and Drugs), by proving that the accused did manifest physical and physiological symptoms or reactions caused by the use of any narcotic drug."
Two Essex County Sheriff's detectives attached to the Narcotics Squad testified to the following facts. Defendant was arrested by them April 24, 1962 at 2 P.M. in Newark and brought to the Essex County Prosecutor's Office in Newark. There they noticed he "had marks on his arms and * * * appeared slightly sluggish." They called in a physician, Dr. Mulvaney, who examined defendant, the time of examination being fixed at some 45 minutes to one hour after the arrest. The doctor reported to the detectives that the defendant was under the influence of narcotics.
The testimony of the doctor bears both on defendant's attack on the constitutionality of the statute pursuant to which he was convicted and his claim that the evidence was insufficient to justify conviction, and we therefore discuss it in detail. On direct examination Dr. Mulvaney stated he was a specialist in internal medicine and that he had taken a medical history from the defendant and examined him physically, including "all the sensory faculties" and "a complete examination of the body of the individual and a neurological examination." As a result thereof he diagnosed defendant as "under the influence of narcotic drug." The doctor was cross-examined at length. He testified that a gross examination of the external surfaces of the defendant's body revealed positive physical findings. Two areas of needle marks on the arms were noted, one area no older than 72 hours. Defendant's face was pale, eyes watery, pupils dilated with sluggish reaction to light, and the mucous membrane of the nose was inflamed and watery. Dr. Mulvaney further noted a fine peripheral tremor, a sleepy mood and yawning. Defendant's balance was fair as compared with sure. Palpation revealed epigastric tenderness in the abdomen. The doctor made no *414 test of any body fluids of the defendant, laboratory tests not being within the scope of his examination.
The doctor explained that while ingestion of narcotics normally results in constriction rather than dilation of the pupils, the latter may be the result in the case of a person chronically addicted to narcotics. In response to a question dealing with the narcotic abstinence syndrome (referred to by counsel as "recovery symptoms," by the court as "withdrawal" and by the doctor as "recovery signs"), the doctor said that yawning and a sleepy mood are signs thereof.
The following testimony of Dr. Mulvaney on cross-examination is particularly relevant to the arguments projected by defendant:
"Q. What is the difference between the symptoms of a chronic narcotics addiction and the symptoms of acute intoxication caused by the proximate ingestion of a narcotic?
A. There are many. * * * With reference to this individual here, the phenomenon of fine peripheral tremor may be found in someone chronically addicted to narcotic drugs as well as someone immediately under the influence of a narcotic. The inflamed and watery nasal mucous is a phenomenon on someone who is immediately under the influence of a narcotic drug. The watery eyes are noted only on someone who is immediately under the influence of a narcotic drug.
The sluggish reaction of the pupils to light may be found on both [kinds of] patients. The sleepy mood is found usually in the individual who is immediately under the influence of a narcotic drug. The person who is chronically a narcotic addict may have impaired neurological coordination so that his turning test and balance and finger to nose tests would be impaired.
In summary, counsel, the chronic narcotic addict individual usually has impairment of all aspects of his central nervous system, so that almost all physical tests of a chronic narcotic addict will be impaired.
Q. What does that leave us with in this case? A. It leaves us in this case with an individual who has been examined by me who seems to have enough significant positive physical findings to bear out a conclusive diagnosis of under the influence of a narcotic drug.
Q. Within what period of time would you say the defendant ingested these narcotics? A. Within eight to twelve hours depending on the amount and the route and the method of administration and the metabolic state of the individual. It could be within 8 to 12 hours.
Q. That is within 8 to 12 hours of the time you examined him? A. Yes."
*415 The State having rested on the evidence described above, defendant moved for judgment of acquittal, which motion was denied by the trial court.
Defendant's proof consisted of testimony by his sister and brother, who had observed him during the night and morning prior to his arrest. Both testified that they did not see him take or administer to himself any narcotics and that they did not observe anything in his condition or appearance which suggested he had taken narcotics. Defendant took the stand and testified that he had not taken any narcotics at any time during the 24 hours prior to his arrest. On cross-examination, he admitted that he had been convicted in 1955 for possession of narcotics.
At the conclusion of defendant's case, the motion for judgment of acquittal was renewed and denied.

I.
Defendant's principal contention is that the State cannot constitutionally punish the status of "being under the influence of a narcotic," relying upon the decision of the United States Supreme Court in Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), rehearing denied 371 U.S. 905, 83 S.Ct. 202, 9 L.Ed.2d 166 (1963). It was there held that a California statute making it criminal to "be addicted to the use of narcotics" was unconstitutional, as interpreted by the California courts, as imposing cruel and unusual punishment contrary to the Eighth and Fourteenth Amendments. The defendant there had been convicted after a charge to the jury, sustained on appeal to a California court, that guilt of addiction could be based upon a finding of a chronic status or condition of addiction, as distinguished from the act of use of a narcotic. Although the same statute also prohibits use or being under the influence of narcotics, the prevailing opinion for the Supreme Court did not in terms condemn either of those criteria of guilt of the statute as unconstitutional.
*416 Defendant realizes that he faces the difficulty of overcoming the recent decision of our own Supreme Court in State v. Margo, 40 N.J. 188 (1963), wherein the proscription of being under the influence of a narcotic drug under N.J.S. 2A:170-8 was held to be valid and not to come within the constitutional condemnation of the Robinson case. His position is that Margo is wrong and was decided without consideration of the arguments addressed by him to us in the present case in support of the contention that the invalidation of punishment for narcotics addiction must necessarily comprehend punishment for being under the influence of narcotics. His argument basically is that in essence both of the conditions referred to consist of a status or condition of involuntary reactions from the previous administration or taking of drugs, and that the rationale of Robinson is applicable to proscribe the punishment by criminal sanctions of any such status as unlawful per se. He concedes the decision does not prohibit punishment of voluntary use of narcotics within the State, notwithstanding the incriminating proof of that offense consists of proof of addiction or of being under the influence of narcotics.
The Supreme Court in Margo distinguished the "chronic status of addiction," for which the United States Supreme Court held a state could not punish, absent use or anti-social behavior within the state, from the condition of being under the influence of a narcotic drug, as follows (40 N.J., at p. 190):
"Our statute does not punish for an unsatisfied craving for drugs. Rather it denounces the state of being under their influence. As we have said, the statute deals with the influence of narcotics to obviate an issue as to whether the drug was taken here or in another jurisdiction. We see no reason why, if a person may constitutionally be punished for using a drug, he may not be punished for being under its `influence,' for realistically the use of a drug offends society's interests precisely because of its baleful influence upon the person and the harm to which that influence may lead. In other words, being under the influence of a drug is itself antisocial behavior It is not some latent or passive proclivity; it is an active state, voluntarily induced and *417 laden with a present capacity for further injury to society. We think society may use the criminal process to protect itself against that harm. Robinson is not to the contrary."
It is obviously not for us to question the logic or the reasoning of the foregoing. It binds us. Being under the influence of a narcotic drug in this State must for purposes of decision of this case be taken as a violation of a criminal statute not within the condemnation of the Robinson decision.

II.
Defendant also argues the statute is unconstitutionally void for vagueness in permitting conviction upon proof "that the accused did manifest physical and physiological symptoms or reactions caused by the use of any narcotic drug." The rule invoked is that a penal statute must specify the elements of the offense which it proscribes with such a reasonable degree of certainty as to apprise those to whom it is addressed of the conduct forbidden, without the necessity of guessing as to its meaning by men of common intelligence. State v. Monteleone, 36 N.J. 93 (1961).
Defendant presents us with the published results of creditable scientific research indicating a number of different categories of possible physical and physiological results which might follow from the use of narcotics, suggesting that some of these arise from causes other than the taking of narcotics. We find the argument not persuasive. The standard of volitional conduct which the public must refrain from in order to avoid conviction under the statute is obviously the taking or permitting the administration to oneself of narcotic drugs having a capacity to render one under their influence. This, we think, is a reasonably explicit guide as to the proscribed conduct to men of common intelligence.
If the argument is addressed to the adequacy of the statutory criteria of guilt for purposes of assessing evidence and adjudicating guilt, under requirements of due process, *418 we have no difficulty in sustaining it. Where the legislative regulatory object is appropriate and the conduct intended to be prohibited is not fairly susceptible of definition in other than general language, there is no constitutional impediment to its use. State v. New York Central Railroad Co., 37 N.J. Super. 42, 48 (App. Div. 1955).
Defendant's supplemental brief suggests that the Supreme Court's construction of the statute in its opinion in the Margo case renders the act unconstitutional in several respects. First, it is argued that the act as construed seeks actually to punish out-of-state use of narcotics by making the proscribed condition in New Jersey punishable without regard to where use took place. But we are bound by the Margo rationale that being under the influence of a narcotic drug is "itself antisocial behavior" and thus punishable if existing in this State (40 N.J., at p. 190). Second, it is asserted that the statute as construed punishes involuntary symptoms, not voluntary acts. This is answered by the Supreme Court itself in the excerpt from its opinion quoted above. Lastly, the claim is made that its construction in the Margo opinion causes the statute to operate so as to punish for an "unsatisfied craving for drugs." The opinion, of course, states the contrary. See the quoted excerpt, supra (40 N.J., at p. 190). Defendant takes issue, citing the court's reliance upon the opinion of a physician arrived at after the appearance of withdrawal symptoms in finding adequate evidence for predication of guilt of the defendant convicted in the Margo case. (40 N.J., at p. 190.) But it is to be noted that the court also refers to "fresh needle punctures." Ibid. In any event, it suffices for purposes of the present case to find, as we do, for reasons presently to be explained, that this defendant was found to manifest symptoms of recent ingestion of narcotics and to be under the influence of narcotics in that sense, entirely without regard to whether he was also manifesting symptoms of withdrawal, arguably indicative of suffering from an insufficiently satisfied craving for drugs.

*419 III.
Defendant argues that if, to save the statute from Robinson, it is held to prohibit being under the proximate or immediate influence of administration of drugs, as distinguished from being under such influence as imports only chronic addiction, the State has not by its proofs here carried its burden of showing guilt beyond a reasonable doubt.
We disagree.
The doctor who testified for the State gave it as his flat opinion, from the symptoms and physical condition exhibited by defendant, that he had ingested narcotics within 8 to 12 hours of the time of the examination. He indicated, moreover, that the needle marks in the vicinity of blood crust on the arm, the inflamed and watery nasal mucous, the watery eyes and the sleepy mood, were definitely indicative of recent administration of drugs or of a person "immediately under the influence of narcotic drugs as opposed to those physical findings which are found in someone who has the illness of narcotic addiction." From this testimony there was ample basis for the court to conclude beyond a reasonable doubt, as its findings clearly indicate it did, that the defendant when charged was under the influence of the administration or taking of narcotic drugs as distinguished from one suffering solely from chronic addiction. There is, of course, no immunity from liability for being under the direct influence of administration of drugs in the fact that the defendant may also, at the same time, be an addict. He is punished under the statute for the former condition only, not the latter.
We commend assigned counsel for an exceptionally able briefing and argument of the defendant's appeal.
Affirmed.