99 N.J. Super. 30 (1968)
238 A.2d 486
STATE OF NEW JERSEY, COMPLAINANT-RESPONDENT, IN THE INTEREST OF B.N., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 1968.
Decided January 25, 1968.
*31 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Robert C. Littman, of Newark Legal Services Project, for appellant.
Mr. Lawrence S. Schwartz, Assistant Prosecutor, for respondent (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Defendant, a 14-year-old juvenile, appeals from her conviction for resisting arrest and uttering *32 loud and offensive language, in violation of two ordinances of the City of Newark.
On October 7, 1966 Officers Peake and DeRogatis of the Newark police while on radio patrol were directed to a group of juveniles said to be congregated near an apartment building at 1907 McCarter Highway, Newark. Upon arriving there they found a group, composed mostly of girls, "milling around." Defendant and two other girls refused to heed Peake's direction that they move on. As he got out of the patrol car to place the three under arrest they fled in different directions. After he entered the apartment to investigate a complaint that a group of girls (which included defendant) had been harassing two other girls who lived there, defendant and her companions returned to the front of the building. Thereafter, when defendant was told that she was under arrest and Peake attempted to take her into custody, she started pulling, struggling, kicking, swinging and using foul language. It required the efforts of both officers to get her into the police car and restrain her there. She was subsequently charged with (1) idling and loafing, (2) resisting arrest and (3) using loud and offensive language, and was convicted of the latter two.
Defendant first urges that the convictions were erroneous because of the absence of proof of an intent to commit either violation.
We are not impressed by the argument advanced on behalf of defendant on this issue. The contention is that defendant's conduct was the emotional reaction of a child to unexpected police action  not an intentional violation of any ordinance. Whether defendant possessed the guilty intent which was a prerequisite to a conviction was a question committed to the judge as trier of the facts. Implicit in his verdict of guilty was a finding that defendant possessed the necessary mens rea. We are satisfied that, considering the proofs as a whole, this finding finds adequate factual support in the record. State v. Johnson, 42 N.J. 146 (1964). There was evidence from which the trial judge could have concluded *33 that defendant had been involved in the harassment of the two other girls which had resulted in the dispatch of the police to the scene. Both officers were in uniform and in a marked police car. Their direction that the group disperse was disregarded by defendant. Although the proofs disclose that she was intelligent and thus should have known that the police officers were in the performance of their duty, she elected to thwart by physical force their efforts to arrest her, while punctuating her resistance by the loud and offensive language revealed by the proofs. From these facts he was justified in finding, as he impliedly did, that defendant's actions were not an impulsive reaction to fear but that she deliberately intended to do just what she was doing.
Defendant next challenges the Newark municipal ordinance under which she was convicted for using loud and offensive language as so vague and imprecise as to violate her rights under the First and Fourteenth Amendments to the United States Constitution.
The ordinance in question, CO 20:7A, provided that:
"Any person who commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:
`Uses loud, offensive, disorderly, threatening, abusive, or insulting language or who conducts himself or behaves in any offensive, disorderly threatening abusive or insulting manner.'"
Defendant relies principally upon Connally v. General Construction Co., 269 U.S. 385, 393, 46 S.Ct. 126, 128, 70 L.Ed. 322 (1926), where the following quotation from United States v. Capital Traction Co., 34 App. D.C. 592, 19 Ann. Cas. 68 was cited with approval:
"`* * * The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of *34 certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.'"
See also Lanzetta v. State of New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939); State v. Joas, 34 N.J. 179, 185-186 (1961).
The test ordinarily to be applied is "whether the text of the ordinance adequately informs persons of the thing they are forbidden by the ordinance to do." State v. New York Central Railroad Co., 37 N.J. Super. 42, 46 (App. Div. 1955). However, where the legislative regulatory object is appropriate and the conduct intended to be prohibited is not fairly susceptible of definition in other than general language, there is no constitutional impediment to the use of such language. State v. Dennis, 80 N.J. Super. 411, 418 (App. Div. 1963); United States v. Petrillo, 332 U.S. 1, 7, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). That there may be marginal cases in which it becomes difficult to determine the side of a line on which a particular fact situation falls is not a sufficient reason to hold the language too ambiguous to define a penal offense. State v. Monteleone, 36 N.J. 93, 99 (1961); State v. New York Central Railroad Co., supra, at p. 48.
Ordinances and statutes whose wording somewhat resembles those here involved have been held to be constitutionally valid in State v. New York Central Railroad Co., supra, and in Kovacs v. Cooper, 135 N.J.L. 64 (Sup. Ct. 1946), affirmed 135 N.J.L. 584 (E. & A. 1947), affirmed 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). In the former, an ordinance which prohibited "whatever loud and unnecessary noise which disturbs the public peace, * * * between the hours of Eleven o'clock P.M. and Seven o'clock A.M." was held to be sufficiently definite to meet the constitutional test. In Kovacs v. Cooper an ordinance which prohibited the operation on public streets of vehicles containing loud speakers, etc. (sound trucks) which emitted "loud and raucous noises" *35 was held to be valid and enforceable by constitutional standards.
Cases involving ordinances which are directed to preventing breaches of the peace constitute a class where it is frequently difficult to set forth the conduct prohibited except in general terms. Thus, in Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), the court held constitutional an ordinance which prohibited the addressing of "any offensive, derisive or annoying word to any person who is lawfully in any street" or the calling of such person "by any offensive or derisive name." It was there held:
"On the authority of its earlier decisions, the state court declared that the statute's purpose was to preserve the public peace, no words being `forbidden except such as have a direct tendency to cause acts of violence by the persons to whom, individually, the remark is addressed.' It was further said: `The word "offensive" is not to be defined in terms of what a particular addressee thinks. * * * The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight. * * * The English language has a number of words and expressions which by general consent are "fighting words" when said without a disarming smile. * * *
Such words, as ordinary men know, are likely to cause a fight. So are threatening, profane or obscene revilings. Derisive and annoying words can be taken as coming within the purview of the statute as heretofore interpreted only when they have this characteristic of plainly tending to excite the addressee to a breach of the peace. * * * The statute, as construed, does no more than prohibit the face-to-face words plainly likely to cause a breach of the peace by the addressee, words whose speaking constitute a breach of the peace by the speaker  including "classical fighting words," words in current use less "classical" but equally likely to cause violence, and other disorderly words, including profanity, obscenity and threats.'" (at p. 573, at p. 770 of 62 S.Ct.)
We are satisfied that the conduct here intended to be prohibited by the ordinance is not fairly susceptible of definition in other than the general language here used. The actions prohibited are such as would usually be considered as having a direct tendency to cause acts of violence by the persons to *36 whom addressed. We therefore find no constitutional invalidity in the ordinance.
As to the issue whether the words used by defendant were violative of the ordinance, we have no doubt. It is difficult to conceive of more inflammatory words than those allegedly uttered by the defendant here, vulgar expressions indicating that the arresting officer was guilty of incest with his mother, uttered in a loud tone of voice in the presence of witnesses.
Affirmed.