**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2874-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARK BROWNE, a/k/a
MICHAEL BROWNE, CHRIS
C. BROWN, MARK BROWN,
CHRISTOPHER M. BROWN,
and CHRISTOPHER COLLINS,

    Defendant-Appellant.

_____

Submitted March 26, 2019 – Decided July 24, 2019

Before Judges Fisher and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 13-08-1529.

Law Offices of Ferro & Ferro, attorneys for appellant (Nancy C. Ferro, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Mark Brown appeals his conviction by a jury of the lesser-included offense of manslaughter, N.J.S.A. 2C:11-4(b)(1), and his sentence as a persistent offender to an extended term of eighteen years in prison with an eighty-five percent period of parole ineligibility. He argues the trial court erred by not allowing testimony from an alibi witness or about a 911 call, and that the jury charge about flight from prosecution should not have been given. Defendant also argues the court made errors in sentencing. He contends that the sentence was excessive, he should not have received an extended term and the trial court should have found mitigating factor twelve. We have considered defendant's arguments. We affirm defendant's conviction and sentence.

I

Following up on a 911 call, the North Bergen police found the dead body of a man near the intersection of a major highway, later identified through his fingerprints as Darryl Williams. A detective testified that the hands of the victim were bound by a belt, duct tape, and cell phone charger cord. His head was encased in a bloody pillowcase. A rope was around his neck and his mouth was taped shut with duct tape. According to the detective, it appeared the victim had

crawled away from underneath a mattress that was loaded on top with cinderblocks; the mattress had blood on it and there was a trail of blood leading from the mattress to the body. A U-Haul truck that also had blood on it was parked near the mattress.

An assistant medical examiner testified the victim died from "asphyxia due to obstruction of [the] airway with multiple blunt and sharp-force injuries." The autopsy showed cuts and bruising to his forehead, eyelids, ears, and lips; a hemorrhage in the white of his left eye; chipped teeth; a hemorrhage of the tongue; and contusions to his chest, sides and back. He had six broken ribs. One arm was completely bruised from the shoulder to the elbow. He had injuries to his hands consistent with defensive wounds. He had been cut or stabbed twenty-three times in the head, back, shoulders, arms and feet.

The victim lived in Newark with his girlfriend, Latoya Mozee. Another detective testified that the police search of her apartment showed bloodstains in the bedroom, stairs and landing. A metal leg was missing from the kitchen table. Kitchen knives were missing.

Qudeera Adams testified at trial that she learned Latoya Mozee had been beaten up by her boyfriend Darryl Williams. Latoya's injuries were visible. When defendant became aware of this, he said "he was going to knock [Darryl]

3

out and teach him a lesson not to hit girls." Adams testified that defendant drove her and Nydia Mozee (Latoya's sister) to buy duct tape. Defendant had a BB gun in the back of his white Cadillac Escalade. They picked up Kathleen Jones and then Daeshawn Jennings, known as "Certified." Defendant paid Certified twenty dollars to "knock out" Darryl.

Adams testified that defendant drove the group to Latoya's apartment; Darryl was there. Certified beat him with the metal table leg; defendant tied up Darryl's head, taped his mouth shut and put a pillowcase over his head. They all beat him. When Darryl stopped moving, Adams testified that defendant wrapped him in a blanket and carried him out to the Escalade. Defendant drove them to the U-Haul lot where defendant and Certified deposited Darryl. Adams testified that defendant told the group not to mention any of this to anyone. Defendant drove the group to purchase cleaning supplies. Videotaped evidence showed defendant and Latoya Mozee at a Pathmark store at 2:14 a.m.

Defendant gave a different version of the events. Defendant testified that he was not driving the Escalade on the night of the assault. He worked for a car dealer and earlier that day, he and another employee (co-worker) went to South Jersey in the Escalade to pick up a car. After they brought that back, defendant switched to driving a black sedan while his co-worker kept the Escalade.

Defendant was driving the black sedan when—after stopping to pick up Adams and another woman and purchasing some food at the Pathmark—he went to Latoya's apartment for a "gathering." He acknowledged learning that same day that Darryl had beaten up Latoya. Defendant testified that after he used the bathroom at Latoya's, he came out to "madness" because a fight had broken out. He claimed that Darryl had beaten Latoya for a second time that night. He saw Latoya, his co-worker and others beating Darryl and said he tried to stop it. He testified that he did assist in holding down Darryl with "six other people in the room" but this was to "get him calmed down and stop everyone from hitting him." Someone put Darryl in a blanket and loaded him in the Escalade. There was blood coming from the blanket and defendant assumed they were taking him to the hospital because somebody mentioned that.

In the early morning, defendant went over to Sharo Willis' house in the black sedan, not the Escalade. Shortly after, Nydia called him because she did not have money to buy cleaning supplies. He met her and others at a Pathmark. He left there for another friend's house and then took a cab to visit another friend.

Later that day, defendant was driving the Escalade when he was stopped by the police for a traffic violation. The car was impounded for ten days. He retrieved it and then sold it in Virginia.

5

Defendant was indicted[1] for first-degree murder, N.J.S.A. 2C:11-3(a)(1) or N.J.S.A. 2C:11-3(a)(2) (count one); and third-degree endangering an injured victim, N.J.S.A. 2C:12-1.2 (count two).  A jury convicted him of the lesser included offense of manslaughter, N.J.S.A. 2C:11-4(b)(1).  The State dismissed the second count of the indictment.

Prior to sentencing, the trial court granted the State's motion under N.J.S.A. 2C:44-3(a) to sentence defendant to a discretionary extended term as a persistent offender.  On December 22, 2016, he was sentenced to an eighteen-year term of incarceration with an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

On appeal, defendant challenges two evidence rulings, a portion of the jury charge and his sentence by raising the following issues:

> POINT ONE:
> THE TRIAL COURT ERRED BY PRESENTING THE FLIGHT CHARGE TO THE JURY OVER THE OBJECTION OF DEFENSE COUNSEL.
>
> POINT TWO:
> THE TRIAL COURT ERRED IN REFUSING TO PERMIT A DEFENSE (ALIBI) WITNESS TO TESTIFY.

---

[1] The indictment also included Latoya Mozee, Qudeera Adams, Nydia Mozee, Daeshawn Jennings and Kathleen Jones.

POINT THREE:
THE COURT ERRED IN REFUSING TO ALLOW TESTIMONY ABOUT THE 911 CALL ON DECEMBER 30, 2012 REGARDING THE DOMESTIC VIOLENCE.

POINT FOUR:
THE TRIAL COURT ERRED BY IGNORING STRONG MITIGATING FACTORS IN DEFENDANT'S FAVOR AT SENTENCING.

POINT FIVE:
THE COURT ERRED IN IMPOSING A DISCRETIONARY EXTENDED SENTENCE UNDER THE FACTS OF THIS CASE.

POINT SIX:
THE SENTENCE WAS EXCESSIVE AND THE COURT ERRED BY IMPOSING A DISCRETIONARY EXTENDED SENTENCE BECAUSE THE STATUTORY REQUIREMENTS WERE NOT MET.

We granted defendant's motion to file a supplemental brief.[2] He raises the additional argument that:

POINT I

EVEN IF ANY ONE OF THE COMPLAINED-OF-ERRORS WOULD BE INSUFFICIENT TO WARRANT REVERSAL OF THE CONVICTION THE CUMULATIVE EFFECT OF THOSE ERRORS WAS TO DENY DEFENDANT DUE PROCESS AND A FAIR TRIAL.

---

[2] On August 21, 2018, we granted defendant's motion to supplement the record on appeal to include additional documents and a certification from defendant.

A-2874-16T2

II

A

Defendant argues the trial court erred by not permitting him to call Sharo Willis as a witness. Defendant claims her testimony would have provided him with an alibi for the time period when the victim was being abandoned near the U-Haul. She was expected to testify defendant was at her house during that time.

We review a trial court's evidential rulings for abuse of discretion. Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008). We give "[c]onsiderable latitude" to the trial court "in determining whether to admit evidence and that determination will be reversed only if it constitutes an abuse of discretion." State v. Feaster, 156 N.J. 1, 82 (1998). Under this standard, we will not substitute our own judgment for that of the trial court, unless "the trial court's ruling 'was so wide of the mark that a manifest denial of justice resulted.'" State v. Marrero, 148 N.J. 469, 484 (1997) (quoting State v. Kelly, 97 N.J. 178, 216 (1984)).

The State rested its case on September 22, 2016, subject to rebuttal. Defendant raised this alibi issue for the first time on September 28, 2016. Willis' name had not been given to the State as a witness. The defense previously advised the State that it would not be calling alibi witnesses. Defense counsel

explained to the court that he recently gained Willis' cooperation for an interview, and now was requesting to call her as a witness. The State opposed the request.

The trial court denied the application because "in week four of the trial, there's now a partial alibi witness whose name was not on the witness list, no information regarding the woman has been furnished to the State . . . ." The court found that there was prejudice to defendant but "greater prejudice" to the State because it was deprived of the opportunity to interview the witness, speak with her or present its case knowing there was an alibi witness. Defendant had the opportunity to provide notice of the alibi consistent with the Rules. The court would not impose a less severe sanction because the jury had been empaneled for four weeks, there were issues about losing two jurors and only two alternates remained. The court found the failure to comply with the Rules was willful and intended by the defense to gain an advantage. The defense had two opportunities to name alibi witnesses and had not done so.

Under Rule 3:12-2(a), defendant was to provide notice to the State if he "intend[ed] to rely in any way on an alibi . . . ." Defendant contends that Willis is a fact witness, but it was clear he intended to offer her as an alibi witness to

9

explain that defendant was not present when the victim was abandoned at the U-Haul lot. The Rule expressly applies to any potential alibi testimony.

Where part "a" of the Rule is violated, part "b" permits the trial court to "refuse to allow the party in default to present witnesses at trial as to defendant's absence from or presence at the scene of the alleged offense" or the court can adjourn or delay the trial "as the interest of justice requires." R. 3: 12-2(b). In applying part "b," a trial court is to consider:

> (1) the prejudice to the State;
>
> (2) the prejudice to the defendant;
>
> (3) whether other less severe sanctions are available to preserve the policy of the rule, such as a continuance or a mistrial to permit the State to investigate the alibi; and
>
> (4) whether the defendant's failure to give notice was willful and intended to gain a tactical advantage.
>
> [State v. Bradshaw, 195 N.J. 493, 507-08 (2008).]

Although defendant argues that Bradshaw should not apply because the alibi did not relate to the time period when the victim was being assaulted, this is wrong because the Rule applies where defendant "intend[ed] to rely in any

10

way on an alibi . . . ." R. 3:12-2(a).[3] The trial court considered all of the Bradshaw factors. It did not abuse its discretion by denying the defendant's request.

We also reject defendant's claim that the trial court should have permitted the jury to hear a 911 call made six hours before the victim was beaten. The defense proffered that the call came from a neighbor of Latoya's, who heard and then reported that a male was beating a female. The trial court denied its admission on the ground the phone call lacked relevance.

Defendant argues the call was relevant so the jury could separate defendant from the other co-defendants. He contends it would corroborate that he entered into a situation where others already were "inflamed" about Latoya's beating and that it was probative of his state of mind.

We agree with the trial judge that the call made six hours earlier about the victim's alleged domestic violence against Latoya, which did not involve defendant, did not have a "tendency in reason to prove or disprove any fact of consequence to the determination of the action." State v. Scharf, 225 N.J. 547,

---

[3] In the reply brief, defendant urges us to find that exclusion of this witness was unconstitutional under the Sixth Amendment. We decline to address this argument. See State v. Lenihan, 427 N.J. Super. 499, 504 n. 2 (App. Div. 2012) ("Rule 2:6-5 precludes the use of a reply brief to add issues not previously raised in the formal brief.").

11

568-69 (2016) (quoting N.J.R.E. 401). In determining relevance, "the inquiry should focus on the logical connection between the proffered evidence and a fact in issue." State v. Cole, 229 N.J. 430, 447 (2017) (quoting State v. Bakka, 176 N.J. 533, 545 (2003)). As noted by the trial court, the call did not tend "to prove or disprove the intent that [defendant] may or may not have had—or the knowledge he may or may not have had six hours later when [the victim was killed]." The court did not abuse its discretion by excluding this 911 call from the jury.

B

Defendant argues the trial court erred by instructing the jury about flight from prosecution. He contends the State's reason for requesting that charge was flawed, that he had a legitimate reason to be in Virginia because he wanted to sell the Escalade, and that it was prejudicial to give this charge because it inferred that he demonstrated consciousness of guilt.

"[A]ppropriate and proper [jury] charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). In reviewing the adequacy of the judge's charge to the jury, we must consider the charge as a whole in determining whether it was

A-2874-16T2

prejudicial. State v. Figueroa, 190 N.J. 219, 246 (2007) (citing State v. Wilbely, 63 N.J. 420, 422 (1973)).

Flight "may be evidential of consciousness of guilt, provided the flight pertains to the crime charged." State v. Randolph, 228 N.J. 566, 594 (2017). A jury instruction on flight requires the jury to first find that there was a departure and then to find the motive for the departure was an attempt to avoid arrest or prosecution on the charged offense. State v. Mann, 132 N.J. 410, 421 (1993) (citing State v. Wilson, 57 N.J. 39, 49 (1970)). "For departure to take on the legal significance of flight, there must be circumstances present and unexplained, which, in conjunction with the leaving, reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid accusation based on that guilt." State v. Ingram, 196 N.J. 23, 46 (2008) (quoting Mann, 132 N.J. at 418-19).

The court instructed the jury as follows:

> THE COURT: There has been some testimony in the case from which you may infer the defendant fled shortly after the alleged commission of the crime. The defense has suggested the following explanation: that the defendant went to Virginia for the preplanned purpose of selling the white Escalade. If you find the defendant's explanation credible, you should not draw any inference of the defendant's consciousness of guilt from the defendant's departure. If, after a consideration of all the evidence, you find the defendant fearing that

A-2874-16T2

an accusation or arrest would be made against him on the charge involving the indictment, took refuge and flight for the purpose of evading the accusation or arrest, then you may consider such flight in connection with all the evidence in the case as indication or proof of a consciousness of guilt. It is for you, as judges of the facts, to decide whether or not evidence of flight shows a consciousness of guilt and the weight to be given such evidence in light of all the other evidence in the case.

We disagree with defendant's argument that the charge was not supported by the evidence. By January 4, 2013, the police wanted to speak with defendant about Darryl's death. Although the Escalade was impounded from December 31 to January 9, 2013, a letter dated January 7, 2013, purported to authorize defendant to sell the vehicle. Defendant then went to Virginia and sold the vehicle, but he claimed it was because he could get more money for it there than in New Jersey. The State claimed that he sold the vehicle in Virginia to avoid prosecution. The timing of the events could fit the State's explanation. Therefore, it was not the instruction that was prejudicial to defendant; it was the evidence—if the jury rejected defendant's explanation for selling the car in Virginia. The trial court did not err by including the flight from prosecution instruction in the jury's charge.

C

At sentencing, the court found aggravating factors one, three, six and nine,[4] but no mitigating factors. Defendant argues the trial court should have found mitigating factor twelve ("[t]he willingness of the defendant to cooperate with law enforcement authorities."). N.J.S.A. 2C:44-1(b)(12). He claims he was "peripherally involved as a confidential informant" in providing information about a gang and that he provided information about a plot to kill an FBI agent and another plot to kill the wife of the judge conducting his criminal trial. Had the court found mitigating factor twelve, he implies his sentence would have been shorter.

Our review of a sentencing determination is limited. See State v. Roth, 95 N.J. 334, 364-65 (1984). We review a judge's sentencing decision under an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). We must determine whether:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

---

[4] N.J.S.A. 2C:44-1(a)(1), (3), (6) and (9).

15

[Ibid. (alterations in original) (quoting Roth, 95 N.J. at 364-65).]

Defendant advised the court about his claimed cooperation, but in finding the absence of mitigating factors, the court clearly did not give weight to that information. The record shows that the court carefully considered the competent and credible evidence, including evidence about the injuries inflicted on the victim, defendant's criminal history and the need to deter future conduct of this nature in evaluating the aggravating and mitigating factors. We have no grounds to disagree with the trial court's considered analysis of these factors and discern no abuse of the court's discretion.

D

Defendant argues that the court erred by sentencing him to an extended sentence as a persistent offender under N.J.S.A. 2C:44-3(a). Although he was convicted of the lesser-included offense of manslaughter, defendant claims the extended sentence was an attempt by the judge to "correct the jury's actual verdict by imposing a discretionary extended sentence more in line with a first[-]degree crime." He also claims that the crimes used as the basis for finding him to be a persistent offender did not satisfy N.J.S.A. 2C:44-3(a).

In evaluating whether to impose an extended sentence, State v. Dunbar, 108 N.J. 80, 89 (1987), requires a "multi-step process."

16

First, the sentencing court must determine whether the minimum statutory predicates for subjecting the defendant to an extended term have been met. Second, the court must determine whether to impose an extended sentence. Third, it must weigh the aggravating and mitigating circumstances to determine the base term of the extended sentence. Finally, it must determine whether to impose a period of parole ineligibility.

[Ibid.]

A persistent offender is defined as:

a person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced.

[N.J.S.A. 2C:44-3(a).]

The court applied the four requirements under Dunbar. Defendant satisfied the definition of a persistent offender. He was over twenty-one years old. He had committed at least two crimes, at different times, when he was at least eighteen years old.

Defendant takes issue with this part of the analysis, claiming there were not enough qualifying crimes. He relies on State v. Clarity, 454 N.J. Super. 603

(App. Div. 2018), that was decided sixteen months after the trial court sentenced defendant.[5] In <u>Clarity</u>, we made clear that in applying N.J.S.A. 2C:44-3(a) "the date of the 'crime' and not the date of the 'conviction' is the relevant event for this aspect of the persistent-offender statute." <u>Clarity</u>, 454 N.J. Super. at 609.

When the court sentenced defendant, it considered the dates of his prior convictions, not the offense dates. Nevertheless, we are satisfied the court did not err in finding defendant was a persistent offender. Defendant was convicted in 2007 for a CDS offense that occurred in 2003. Defendant was sentenced to a one-year jail term. He was also convicted in federal court in 2006 for offenses occurring between January 2002 and December 2002. He was sentenced to a term of fifty-eight months. Both of these offenses occurred within ten years of this December 31, 2012 offense. We agree with the State that even though the one-year sentence on the State charge was to be served concurrent with the federal charge, defendant did not dispute that these were separate crimes that could be considered by the court under N.J.S.A. 2C:44-3(a), even if the periods of confinement overlapped.

---

[5] Neither of the parties address whether <u>Clarity</u> applies to a sentence entered in 2016.

The court determined that an extended sentence was appropriate. In sentencing defendant, the court weighed the aggravating and mitigating factors. It did not consider the death of the victim as an aggravating factor because that "would be double counting." The court took into consideration the "nature and circumstances of the offense," finding that the victim was "tortured" and that there were "multiple opportunities where it could have stopped . . . [b]ut it just went on and on, for hours." N.J.S.A. 2C:44-1(a)(1). There was a risk of re-offense based on his prior convictions. N.J.S.A. 2C:44-1(a)(3). It considered the seriousness of the offenses, as well as the need to deter any such future conduct. N.J.S.A. 2C:44-1(a)(6) and (9). The court sentenced defendant to an extended term with an eighty-five percent period of parole ineligibility based on NERA.

We are satisfied that the court did not abuse its discretion in sentencing defendant within the extended term range. See State v. Pierce, 188 N.J. 155, 169-70 (2006) (providing "the court will apply an abuse of discretion standard to the sentencing court's explanation for its sentencing decision within the entire range"). The findings of aggravating and mitigating factors were based upon competent and credible evidence in the record. Defendant's sentence did not violate the sentencing guidelines nor was it excessive for this offense.

19

E

Defendant contends the trial suffered from "cumulative errors" that deprived him of a fair trial. See State v. Simms, 224 N.J. 393, 407 (2016) (reversing conviction based on the "cumulative effect of the errors"). In light of our opinion, rejecting the issues raised on appeal, there is no cumulative error that would warrant a reversal of defendant's conviction or sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2874-16T2