# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2616-21

J.P.,

    Plaintiff-Appellant,

v.

J.N.,

    Defendant-Respondent.

_____

Submitted December 12, 2023 – Decided January 17, 2024

Before Judges Whipple, Mayer, and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-9584-21.

J.P., appellant pro se.

Wilentz, Goldman & Spitzer, PA, attorneys for respondent (John Edmund Hogan, Jr. and Pierre Chwang, of counsel and on the brief).

PER CURIAM

Plaintiff J.P.[1] appeals from a March 18, 2022 order dismissing his complaint with prejudice and denying his cross-motion for summary judgment against defendant J.N. We affirm.

I.

We glean the facts from the motion record. Plaintiff is defendant's son. In 2015, plaintiff filed a Law Division complaint against defendant, asserting various tort claims (underlying litigation). Following the exchange of discovery, including expert reports, the parties engaged in settlement negotiations through counsel.

On September 14, 2017, as the underlying litigation continued, defendant purchased a condominium in Spring Lake, with a $68,250 down payment and a $174,250 mortgage.[2] The deed to the condominium was recorded on October 10, 2017, and titled in the name of defendant, his wife, and son, with defendant and his wife each holding a 49.5% interest in the property, and defendant's son owning the remaining 1% interest.

---

[1] Because the record is sealed, we use the parties' initials. R. 1:38-11.

[2] Plaintiff mistakenly claims defendant purchased the condominium on September 29, 2017.

A-2616-21

The record reflects the parties and their counsel attended a settlement conference before Judge Mayra V. Tarantino on October 4, 2017, but were unable to resolve the matter. Further, the record shows the parties were scheduled to proceed to a Lopez hearing[3] on July 16, 2018. According to an October 9, 2018 certification filed by plaintiff's former counsel in the underlying litigation, "[s]everal weeks before the [Lopez] hearing[,] the case [was] conferenced by Judge Tarantino," who attempted "[t]o address the gap between [p]laintiff's settlement demand and [d]efendant's [then settlement] offer."

Plaintiff's former counsel also stated in his October 9 certification that during that 2018 conference, Judge Tarantino "recommended . . . [d]efendant provide [p]laintiff's attorney with a schedule of assets and liabilities for attorney's eyes only . . . . to substantiate [d]efendant's claim that his ability to settle was limited by his assets." In the same certification, plaintiff's former attorney stated, "[d]efendant previously sent me a financial statement listing [d]efendant's assets and liabilities for my eyes only. I have not shared it with my client." Counsel also certified that based on additional settlement

---

[3] A Lopez hearing is meant to provide an opportunity for the "equitable claims of opposing parties [to] be identified, evaluated and weighed" by the trial court before determining the date upon which a plaintiff became aware of the facts giving rise to the cause of action. Lopez v. Sawyer, 62 N.J. 267, 274 (1973).

A-2616-21

discussions on July 11, 2018 between himself and defendant's then attorney,[4] they "communicated to the [c]ourt . . . the case was resolved[,] and the <u>Lopez</u> hearing was adjourned."

The parties were unable to finalize the terms of a settlement until the following year, although defendant's attorney provided plaintiff's former counsel with a draft settlement agreement in August 2018. Then, with no admission of liability by defendant, the parties fully executed a confidential settlement agreement (CSA) on November 26, 2019.

Under the CSA, defendant agreed to pay plaintiff the sum of $225,000, in three installments over the course of two years. The first payment of $120,000 was due five days after the CSA was executed; the second installment of $52,500 was due one year later; and the final payment of $52,500 was due in November 2021. The CSA also provided:

> [Defendant] shall maintain a Last Will and Testament (Will) which shall provide that [plaintiff] shall be entitled to inherit one-third (1/3 or 33.334%) of [defendant]'s probated estate as valued as of the time that said Will is filed for probate . . . . <u>In the event . . . that any Will . . . fails to contain the aforementioned term[,] . . . the executor or administrator of the estate shall take the necessary measures to enforce the requirements of this [CSA]. . . . It is understood that</u>

---

[4] Defendant's counsel during the underlying litigation also represents defendant on the current appeal.

any . . . expenditures, . . . or actions by [defendant] done prior to the [effective date of the CSA] shall not be a basis to contest the value of [defendant's] probated estate.

[(Emphasis added).]

Additionally, under the CSA, plaintiff agreed to "release[] and discharge[]" defendant

from all known and unknown charges, complaints, claims, grievances, liabilities, . . . damages, actions, causes of action, . . . and punitive damages, of any nature whatsoever, . . . which [plaintiff] has, or may have had, against [defendant], whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from . . . [the underlying litigation] between [the parties] during their lifetime up to and including the [e]ffective [d]ate [of the CSA,] but for breach or fraud relative to this settlement.

[(Emphasis added).]

Claims were defined under the CSA, in part, as:

[A]ny and all actual . . . or alleged past or present claim, action, . . . cause of action and any other assertion of liability of any kind, . . . whether currently known or unknown, . . . and whether sounding in tort, . . . or common law cause of action of any sort. Without limiting the generality of the foregoing, ["]Claim["] shall include any past or current claim in law, equity, contract, tort, . . . or any other claim . . . whether known or unknown, which [plaintiff] . . . may hold arising from any and all allegations between the [parties] from the

5

A-2616-21

beginning of time through the effective date [of the CSA] . . . which might not yet have accrued.

[(Emphasis added).]

Finally, the CSA confirmed defendant provided a list of assets and liabilities to plaintiff's former counsel "for [counsel's] eyes only" before the parties executed the CSA. Specifically, the CSA stated:

> In entering into this [CSA], the [p]arties acknowledge that they have relied upon the legal advice of their respective attorneys, . . . that [the CSA's] terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other [p]arty. The [p]arties represent and acknowledge that in executing this [CSA,] they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other [p]arty or by that other [p]arty's . . . attorneys with regard to . . . this [CSA] or otherwise but for the provision of [defendant's] balance sheet to . . . [plaintiff's attorney] for his eye's only, at the recommendation and advice of the [c]ourt, which was provided . . . to enable [plaintiff] to discern [defendant's] liquidity and ability to pay a settlement.

[(Emphasis added).]

Consistent with the CSA, defendant made his last settlement payment to plaintiff on November 19, 2021. Less than a month later, plaintiff filed a complaint against defendant, alleging defendant "perpetrated a fraudulent conveyance" by purchasing the Spring Lake condominium in September 2017

"in clear anticipation of the [October 4, 2017] settlement conference with Judge Tarantino," knowing the judge "previously requested that . . . [d]efendant produce his balance sheet for the conference." Plaintiff also alleged defendant bought the condominium, knowing "his liquidity for paying a settlement could be determined" at the October 4 conference. Further, plaintiff claimed that given the timing of defendant's purchase, "[a]ny reasonable person would agree[ defendant] did this to appear less liquid to pay a higher settlement amount" to plaintiff. Additionally, plaintiff asserted, "[b]ased on the financial information[ defendant provided to plaintiff's attorney, p]laintiff lowered his demand" for settlement, and "was deceived into a deficient settlement." Finally, plaintiff alleged defendant "breached the terms of the [CSA] by not providing proof that he created, and [wa]s maintaining a Last Will [and] Testament."

Defendant disputed plaintiff's recollection of when Judge Tarantino recommended that defendant disclose his financial circumstances, claiming Judge Tarantino made this recommendation in June 2018, weeks before the July 2018 Lopez hearing was scheduled to proceed, and several months after defendant bought the condominium.[5]

---

[5] On appeal, defendant contends plaintiff's own attorney confirmed in his October 9, 2018 certification that Judge Tarantino "suggested [the] financial

In January 2022, defendant's attorneys sent a "frivolous litigation letter" to plaintiff's counsel, per Rule 1:4-8(b), asking that plaintiff withdraw his complaint with prejudice. Plaintiff declined the request. The next month, defendant moved to dismiss plaintiff's complaint pursuant to Rule 4:6-2(e).[6] Plaintiff cross-moved for summary judgment against defendant, arguing plaintiff was fraudulently induced to enter into the CSA.

On March 18, 2022, Judge Robert H. Gardner heard argument on the parties' cross-applications after briefly summarizing the facts of the case. The judge noted the underlying litigation was resolved under a "confidential agreement . . . in November of 2019. . . . [and] the last payment [due under the CSA] was made . . . [i]n November of 2021." The judge continued:

> The allegations in this case indicate that . . . defendant purchased a condo[minium] on [September 14, 2017]. . . . [P]laintiff claims it was . . . bought with money that could have been used in settlement in the

---

disclosure[] a few weeks prior to the July 16, 2018" Lopez hearing, and "[i]ndeed, the disclosure was made in June 2018, not 2017[,] as pled by [p]laintiff." Defendant also argues plaintiff mistakenly relies on a "supposed April 11, 2019 draft brief prepared by former counsel for [p]laintiff" to support his faulty argument that Judge Tarantino made the recommendation in 2017 in anticipation of the October 4, 2017 settlement conference.

[6] This Rule allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." R. 4:6-2(e).

[20]15 case, and it was, apparently . . . not disclosed during the pendency of the 2015 case.

Defense disputes this. In fact, [defendant] indicates [the Spring Lake] condo[minium] was disclosed as part of the . . . June 2018 disclosure made on the balance sheet as a result of . . . Judge Tarantino . . . trying to [effectuate] . . . settlement negotiations that apparently occurred, and . . . the condo[minium] was disclosed . . . months post-purchase of the condo[minium].

Defendant's counsel responded to the judge's summary, stating, "I would like to correct [the record] that . . . plaintiff does not dispute . . . that we accurately disclosed the condo[minium]. If we go to [plaintiff's] opposition brief, . . . they say . . . defendant represented that he did own a condo[minium] that was valued at a dollar amount. So that disclosure was accurate." Defendant's attorney highlighted this position again during argument, asserting defendant's Spring Lake condominium was "accurately disclosed on [defendant's] balance sheet" and "[t]here[ were] no allegations in any of the [parties' submissions] that anything was hidden."

Plaintiff's current counsel countered that "[w]hether the condo[minium] was disclosed [to plaintiff's former counsel] or not [before entering into the CSA wa]s irrelevant." Counsel further argued, "[t]he date of the acquisition" of the condominium "[a]nd the fact that there were nondisclosures of information"

9

from defendant "unfairly and unduly pushed . . . plaintiff into a direction where he never would have settled if . . . there were full disclosure[s]."

Judge Gardner challenged plaintiff's argument, stating the condominium "was on the balance sheet at the time that the underlying case was settled," and "whether it was a liquid . . . asset, or in this case not . . .a liquid asset," "it was disclosed, so what's [plaintiff's] point?" Plaintiff's counsel responded, "disclosure is one thing, but the . . . actual value of the disclos[ed asset], . . . is really what we're talking about here," adding, "the date of the purchase was not disclosed, and that's significant," and "[t]he location was not disclosed either."

Judge Gardner disagreed, stating, "[i]t doesn't matter because [the condominium] was listed as an asset." Further, the judge noted plaintiff's former counsel could have conducted "an asset check to see whether . . . the defense ha[d] anything worth executing against, right?" The judge also highlighted this point, rhetorically asking whether plaintiff's former counsel "ha[d] an obligation to say, ['] wait, where is that [condominium] located and what's the address so I can do an asset check,['] so [plaintiff could] figure out what [the] value . . . [wa]s?" Additionally, Judge Gardner observed the condominium could have been "a million-dollar home . . . with no equity in" it, so it would "fall[] upon . . . plaintiff to do . . . due diligence before . . . agree[ing] to settle a case."

A-2616-21

After noting the parties' litigation started in 2015 but did not end until 2019, the judge concluded "[t]he onus [wa]s on . . . [plaintiff's] lawyer to have done what they should have done," by determining "the value of how much . . . defendant [wa]s worth so they c[ould] figure out [a settlement] payment." Rather than "now . . . turn[ing] around and say[ing] somehow[, ']we didn't know the value of [the condominium']." The judge also reiterated plaintiff's former counsel was "under an obligation to do what they should have done with regard to . . . plaintiff and the [net worth] of . . . defendant," adding, "I did professional malpractice work, [as a] defense attorney, so . . . I understand the issues."

Next, the judge found plaintiff "could have [opted] not [to] settle[] the case either and gone to judgment . . . [but he] didn't do it." This remark prompted the following exchange:

> [Plaintiff's Counsel]: Your Honor, we could talk about the conveyance now. . . . [T]his is another example of the defendant hiding assets. The conveyance was done—let me get the date.
>
> [Judge Gardner]: The [condominium] property was bought on [September 14, 2017], at least according to what was provided to me, which was before the settlement conference of the 2015 case. That . . . disclosure was part of a balance sheet that was made and was given to the plaintiff['s attorney i]n . . . June of 2018, . . . post-purchase of the condo[minium].

11

> [Plaintiff's Counsel]: <u>Right, Judge</u>, so the . . . issue here is the money[,] or some of the money could have come to . . . plaintiff at that date of conveyance, [September 14, 2017,] if it were disclosed . . . . And . . . not disclosing it, it obviously [was] defendant hiding assets for the purpose of lowering his . . . gross assets to get a lower settlement . . . . But that's all part and parcel of the mentality of . . . defendant in evading the true value of his estate, . . . and that's really what we're talking about.
>
> [(Emphasis added).]

Plaintiff's counsel also asserted that instead of "get[ting] a loan to pay . . . plaintiff," defendant "got a loan to buy a piece of real estate."

At the conclusion of the hearing, Judge Gardner stated, "I don't find that there's a breach [of the CSA] or fraud related to the settlement." The judge also found "plaintiff [wa]s not a creditor" under the Uniform Fraudulent Transfer Act (UFTA), N.J.S.A. 25:2-20 to -34.[7] The judge reasoned, "[a]ll settlement payments were made to . . . plaintiff."

---

[7] The UFTA was amended and renamed the Uniform Voidable Transactions Act (UVTA), N.J.S.A. 25:2-20 to -36, effective August 10, 2021. <u>See</u> <u>L.</u> 2021, <u>c.</u> 92 §1. Thus, although the UFTA was in effect when defendant purchased his condominium in 2017, the parties' cross-applications were decided after the enactment of the amended statute. Accordingly, we rely on the amended statute for our legal analysis, despite any references to the UFTA in the parties' briefs, or by the judge in his March 18, 2022 oral opinion. We also use the term, "UFTA," interchangeably with the term, "UVTA," solely for the purpose of this opinion, given the parties' repeated use of the former term.

Additionally, the judge concluded plaintiff's fraudulent transfer claim under the UFTA was barred by the statute of limitations,[8] explaining defendant purchased the condominium in September 2017, disclosed the purchase "on the balance sheet at the time that the [2015] case was settled," and then plaintiff waited until December 2021 to allege defendant "perpetrated a fraudulent conveyance" by purchasing the condominium. Judge Gardner also rejected plaintiff's fraudulent inducement claim, explaining that for plaintiff to prevail on this claim,

> there ha[d] to be a material misrepresentation of known facts, with knowledge that the fact [wa]s false, with the intention to get the [other] person to rely on that fact, [and] with damages caused by the . . . person [making the material misrepresentation]. The property was disclosed in this particular case. The fact that [the condominium] was[ not] disclosed with specificity is . . . neither here nor there. That[ is] on the onus of the . . . plaintiff and plaintiff's counsel to do their appropriate due diligence.
>
> . . . [T]hey ha[d] an obligation to go out and verify . . . what the defendant[] was claiming was the value of the . . . [Spring Lake] property. [As] I said, it could . . . be a million-dollar piece of property with a [$]999,999 mortgage on it. It could have no equity at

---

[8] The statute of limitations for a fraudulent transfer is "not later than four years after the transfer was made . . . or, if later, not later than one year after the transfer . . . was discovered by the claimant." N.J.S.A. 25:2-31(a).

all [i]n it.  So[,] I'm not convinced.  The fraudulent inducement [claim] does[ not] apply here.

Lastly, Judge Gardner denied plaintiff's cross-motion for summary judgment, stating, "[g]iven the . . . [CSA] as framed, I don't find there's a basis for summary judgment to be granted . . . [to] plaintiff."

II.

On appeal, plaintiff, now self-represented, raises nine overlapping arguments.  First, he contends:

> [D]efendant committed fraud by transferring $75,000 into a condominium, while transferring 50.5% ownership to his wife and other son, days prior to the [October 2017] settlement conference [and] then misrepresenting the condominium as solely [defendant's] on his balance sheet[,] to receive consideration for the full mortgage obligation . . . while deliberately increasing his debt[-]to[-]income ratio to minimize his credit availability for securing a loan to pay a settlement[, and] concealing the date of the transference and location, [then] waiting until [six] days after the settlement conference to record the deed and the mortgage.

Next, plaintiff argues Judge Gardner erred in: (1) "not permitting discovery to take place" before granting defendant's motion to dismiss; (2) "failing to consider . . . defendant's intent to deceive" plaintiff; (3) "disregard[ing] the entire premise of . . . plaintiff's argument concerning defendant's misrepresentation, as well as concealment" and "erroneously

14

t[aking] the position that [because] the [condominium] was listed on . . . defendant's balance sheet, . . . defendant made a full disclosure"; (4) "disregard[ing] the fact . . . the date of the settlement conference was a fact in dispute," and then "sid[ing] with the defense's version [of when Judge Tarantino recommended defendant disclose his assets and liabilities] without . . . [a] preponderance of evidence, or discovery"; (5) "admitting his bias as a former defense attorney" when conducting oral argument on March 18, 2022; (6) "suppress[ing] material communications in not permitting oral argument on many of the issues" by "emphatically stating he 'read everything'"; (7) finding "the [UFTA] did not apply"; and (8) "fail[ing] to adjudicate the breach of contract cause of action alleged in [plaintiff's] complaint," considering "[d]efendant ha[d] an implied covenant of good faith and fair dealing as it relate[d] to the [CSA], in providing . . . plaintiff with a copy of his Will."[9]

---

[9] Plaintiff raises additional arguments for the first time in his reply brief, which we do not consider. "Raising an issue for the first time in a reply brief is improper." Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001) (citing State v. Smith, 55 N.J. 476, 488 (1970)); see also Pressler & Verniero, cmt. on R. 2:6-5 (2023) (noting the "impropriety of using a reply brief to add issues not theretofore raised"); State v. Lenihan, 427 N.J. Super. 499, 504 n. 2, (App. Div. 2012) ("Rule 2:6-5 precludes the use of a reply brief to add issues not previously raised in the formal brief.").

Based on our review of the record and the applicable principles of law, we are satisfied plaintiff's arguments are without merit. R. 2:11-3(e)(1)(E). We add the following comments.

We review "Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted" de novo. Baskin v. P.C. Richard & Son, 246 N.J. 157, 171 (2021) (citing Dimitrakoupolos v. Borrus Goldin, 237 N.J. 91, 108 (2019)). "A reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107). A court must search the complaint thoroughly "and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Ibid. (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). "[I]f the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed." Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107). A motion to dismiss under Rule 4:6-2 is limited to "the pleadings themselves." Dimitrakopoulos, 237 N.J. at 107 (quoting Roa v. Roa, 200 N.J. 555, 562 (2010)).

"[A] dismissal with prejudice is 'mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted,' or if 'discovery will not give rise to such a claim.'" Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022), cert. denied sub nom. 252 N.J. 258 (2022), and, 252 N.J. 261 (2022) (first quoting Rieder v. State, 221 N.J. Super. 547, 552 (App. Div. 1987), then quoting Dimitrakopoulos, 237 N.J. at 107).

We also recognize New Jersey has a strong public policy favoring the settlement of litigation. Gere v. Louis, 209 N.J. 486, 500 (2012); Brundage v. Est. of Carambio, 195 N.J. 575, 601 (2008) (stating "settlement of litigation ranks high in our public policy"). "This policy rests on the recognition that 'parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone.'" Gere, 209 N.J. at 500 (quoting Impink ex rel. Baldi v. Reynes, 396 N.J. Super. 553, 563 (App. Div. 2007)). "In furtherance of this policy, our courts 'strain to give effect to the terms of a settlement wherever possible.'" Brundage, 195 N.J. at 601 (quoting Dep't of Pub. Advoc. v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523, 528 (App. Div. 1985)). Moreover, a court must be careful not to make a

better contract for the parties than the one they made for themselves. <u>Kotkin v. Aronson</u>, 175 N.J. 453, 455 (2003).

"A settlement agreement between parties to a lawsuit is a contract." <u>Nolan v. Lee Ho</u>, 120 N.J. 465, 472 (1990). Thus, such agreements "will be honored absent a demonstration of fraud or other compelling circumstances." <u>Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot.</u>, 447 N.J. Super. 423, 438 (App. Div. 2016) (citation omitted).

"[F]raud is never presumed but must be established by clear and convincing evidence." <u>Weil v. Express Container Corp.</u>, 360 N.J. Super. 599, 613 (App. Div. 2003). "A court may dismiss a complaint alleging fraud if 'the allegations do not set forth with specificity, nor do they constitute as pleaded, satisfaction of the elements of legal or equitable fraud.'" <u>State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.</u>, 387 N.J. Super. 469, 484-85 (App. Div. 2006) (quoting <u>Levinson v. D'Alfonso & Stein</u>, 320 N.J. Super. 312, 315 (App. Div. 1999)). To prove common-law fraud, a party must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the [person making the statement] of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."

18

Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015).

Next, we are mindful "[t]he purpose of the [UFTA] is to prevent a debtor from placing his or her property beyond a creditor's reach." Gilchinsky v. Nat'l Westminster Bank, 159 N.J. 463, 475 (1999) (citing In re Wintz Cos., 230 B.R. 848, 859 (8th Cir. 1999)). "Underlying the Act is the notion that a debtor cannot deliberately cheat a creditor by removing [the debtor's property] from the 'jaws of execution.'" Ibid. (citing Klein v. Rossi, 251 F. Supp. 1, 2 (E.D.N.Y. 1966)). "[F]raudulent conveyance claims . . . allow the creditor to undo the wrongful transaction so as to bring the property within the ambit of collection." Ibid.

N.J.S.A. 25:2-25 governs fraudulent transfers as to present or future creditors and states, in part:

> a. A transfer made . . . by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made[,] . . . if the debtor made the transfer or incurred the obligation:
>
> > (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> >
> > (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were

A-2616-21

> unreasonably small in relation to the
> business or transaction; or
>
> (b) Intended to incur, or believed . . . the
> debtor would incur, debts beyond the
> debtor's ability to pay as they become due.
>
> [N.J.S.A. 25:2-25(a).]

"A creditor making a claim for relief under [N.J.S.A. 25:2-25(a)] has the burden of proving the elements of the claim for relief by a preponderance of the evidence." N.J.S.A. 2-25(b).

N.J.S.A. 25:2-27 allows for a transfer or obligation to be voidable as to a present creditor and provides, in part:

> a. A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or . . . became insolvent as a result of the transfer . . . .
>
> b. A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.
>
> [N.J.S.A. 25:2-27 (a) and (b).]

20

"[A] creditor making a claim for relief under . . . [N.J.S.A. 25:2-27] has the burden of proving the elements of the claim for relief by a preponderance of the evidence." N.J.S.A. 25:2-27(c).

Under the plain language of the UFTA, a creditor is defined as "a person who has a claim." N.J.S.A. 25:2-21. A debtor is defined as "a person who is liable on a claim." Ibid. Claim is defined as "a right to payment." Ibid.

"A court applying [the UFTA] must undertake a fact-sensitive inquiry, analyzing the circumstances and the terms of the transfer at issue." Motorworld, Inc. v. Benkendorf, 228 N.J. 311, 326 (2017). "Factors to be considered in determining fraudulent intent, i.e. 'badges of fraud,' include whether . . . '[t]he transfer . . . was disclosed or concealed.'" Jecker v. Hidden Valley, Inc., 422 N.J. Super. 155, 164 (App. Div. 2011) (quoting N.J.S.A. 25:2-26(c)).

Governed by these standards, we discern no basis to disturb the March 18, 2022 order. Here, the parties settled their underlying litigation by entering into a comprehensive CSA, with the benefit of counsel. Under the CSA, plaintiff agreed he would be barred from pursuing any further claims against defendant arising from the underlying litigation, "but for breach or fraud relative to" the CSA. Based on the record before us, we agree with Judge Gardner that plaintiff

failed to establish the elements of fraud or breach relative to the CSA. Thus, the judge properly dismissed plaintiff's complaint.

Indeed, the record reflects plaintiff advanced bare allegations of fraud and fraudulent conveyance, rather than evidence for a reasonable fact finder to determine by a preponderance of the evidence that defendant's 2017 purchase of the condominium was made "with actual intent to hinder, delay or defraud" plaintiff, or that the purchase was made "without receiving a reasonably equivalent value in exchange for the transfer." N.J.S.A. 25:2-25. Moreover, regardless of the parties' dispute as to when Judge Tarantino recommended—versus ordered—defendant to provide a list of his assets and liabilities to plaintiff's counsel, the record supports Judge Gardner's finding that defendant provided such a list to plaintiff's counsel no later than June 2018, well before the parties entered into the CSA. Further, as Judge Gardner pointed out, plaintiff provided no explanation as to why plaintiff's counsel could not have exercised due diligence to assess defendant's net worth after receiving defendant's list of assets and liabilities more than a year before the parties executed the CSA.

Moreover, the record supports Judge Gardner's finding that because defendant bought the condominium in September 2017, disclosed the purchase no later than June 2018, the parties entered into the CSA in November 2019, and

22

plaintiff waited until December 2021, i.e., more than four years after the condominium purchase, to file a complaint asserting a claim for a fraudulent conveyance, plaintiff's UFTA claim was untimely under N.J.S.A. 25:2-31.

Next, we are persuaded Judge Gardner correctly found plaintiff failed to establish he was a creditor under the UFTA because plaintiff had no "right to payment" from defendant when plaintiff filed the December 2021 complaint. That is because defendant made each of the three payments due under the CSA.

Finally, we agree with Judge Gardner that plaintiff failed to state a claim for breach of contract. To prevail on a breach of contract claim,

> a plaintiff must prove four elements: "first, that the parties entered into a contract containing certain terms; second, that [the] plaintiff did what the contract required [the plaintiff] to do; third, that [the] defendant did not do what the contract required [the defendant] to do, defined as a breach of the contract; and fourth, that [the] defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff."
>
> [Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019) (alterations in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)).]

Here, despite plaintiff's argument to the contrary, the CSA could have, but did not include a provision that defendant would provide a copy of his Will to plaintiff. Instead, the CSA stated if the Will "fail[ed] to contain the . . . term" that plaintiff was "entitled to inherit one-third . . . of [defendant's] probated

23

estate," "the executor or administrator of the estate" was obligated to "take the necessary measures to enforce the requirements of [the CSA]." Under these circumstances, Judge Gardner properly declined to modify the parties' CSA to include a term the parties failed to negotiate for themselves, and correctly found plaintiff failed to establish defendant breached the CSA.

To the extent we have not addressed plaintiff's remaining arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION